## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SARAH HOLM, KATHLEEN MCDERMOTT,** and **NICOLE SLINGER,** on behalf of themselves and all others similarly situated, | **Case No.** |
| Plaintiffs, | |
| **v.** | |
| **CASELY, Inc.** | |
| Defendant. | |

## PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiffs Sarah Holm, Kathleen McDermott, and Nicole Slinger ("Plaintiffs"), individually, and on behalf of all others similarly situated (the "Class," as defined below), bring this Class Action Complaint against Casely, Inc. ("Casely" or "Defendant"). Plaintiffs base these allegations on personal knowledge as to matters related to and known to them. As to all other matters, Plaintiffs base their allegations on information and belief and through investigation of their counsel. Plaintiffs believe substantial evidentiary support exists for the allegations below.

## NATURE OF THE ACTION

1.     Defendant, Casely, is a technology accessories company selling, among other products, portable rechargeable power banks.

2.     Plaintiffs bring this case on behalf of themselves and all other consumers nationwide who bought Defendant's Casely Power Pod 5000mAh MagSafe Wireless Phone Charger between March 2022 and September 2024 ("Power Pods").

3.      Unbeknownst to consumers, these Power Pods contained defective lithium batteries and thus were prone to severe overheating resulting in an unreasonable risk of fire and burn hazards to consumers and their property, making them worthless.

4.      On April 17, 2025, Casely and the U.S. Consumer Product Safety Commission ("CPSC") issued a recall for any Power Pod, Model E33A, purchased from March 2022 through September 2024.[1] By the time of the recall, there were numerous reports of the lithium battery in the Power Pods overheating resulting in property damage and burn injuries.

5.      The Power Pods were and are unfit for distribution and use due to their defective lithium batteries, which cause the Power Pods to overheat, expand, or catch fire, resulting in at least six burn injuries as of April 17, 2025.[2]

6.      Plaintiffs are individuals who purchased the Power Pods without notice or knowledge that the Power Pods were worthless and/or worth less than the price they paid because of the defect, and they are individuals who were unable to use the Power Pods due to the Power Pods overheating, expanding, and/or catching fire.

7.      Defendant or its agents manufacture, warrant, advertise, market, distribute, and sell these Power Pods online and in stores to consumers, including Plaintiffs, across the United States and abroad.

---

[1] *Recall Safety Notice*, CASELY (Apr. 17, 2025) https://www.getcasely.com/pages/2025-recall; *Casely Recalls Wireless Portable Power Banks Due to Fire and Burn Hazards*, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION (Apr. 17, 2025) https://www.cpsc.gov/Recalls/2025/Casely-Recalls-Wireless-Portable-Power-Banks-Due-to-Fire-and-Burn-Hazards.
[2] iHeart Radio, *Urgent Recall Issued for Wireless Chargers After Reports of Burn Injuries*, KRDU 1130 (Apr. 18, 2025) https://krdu1130.iheart.com/content/2025-04-18-urgent-recalled-issued-for-wireless-chargers-after-reports-of-burn-injuries/?utm_source=chatgpt.com.

8.     Defendant marketed and advertised its Power Pods as being fit or suitable for human use. However, Defendant's marketing and advertising of the Power Pods is false, deceptive, and misleading to reasonable consumers because the Power Pods included defective lithium batteries and thus were not as advertised, represented, or guaranteed. Plaintiffs and Class Members relied on these warranties and misrepresentations when purchasing and using the Power Pods, and in so doing lost money and were put in harm's way.

9.     Considering there are similar power banks on the market that do not contain defective lithium batteries, the defect was avoidable.

10.     Feasible alternative formulations, designs, and materials are currently available and were available to Defendant at the time the Power Pods were formulated, designed, and manufactured.

11.     Defendant did not notify Plaintiffs or Class Members of the risk that the Power Pods could contain defective lithium batteries through packaging or advertising—an omission that caused harm to the purchasers of the products.

12.     Plaintiffs and Class Members would not have purchased the Power Pods had they known the products contained, or might have contained, defective lithium batteries and/or that Defendant did not adequately inspect the Power Pods before selling them.

13.     Plaintiffs and Class Members suffered property damage and injury as a result of the defective lithium batteries, and because Plaintiffs and Class Members purchased a product that Defendant and the U.S. Consumer Product Safety Commission have instructed consumers not to use, which rendered the Power Pods worthless, they have suffered losses.

3

14.     Accordingly, Plaintiffs bring this action and assert consumer protection and deceptive trade practices claims on behalf of themselves and all other similarly situated persons for damages and equitable remedies.

## I.      JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million (exclusive of interests and costs), the number of members of the proposed Class exceeds 100, and many members of the proposed Class are citizens of different states than Defendant.

16.     This Court has personal jurisdiction over Defendant because Defendant is a citizen of New York with its principal place of business in this district and regularly conducts business in this forum.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Defendant does substantial business in this District and a significant number of the sales of the Power Pods took place in this District, thus, this District is where a substantial part of the events or omissions giving rise to the claims occurred.

18.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## II.     PARTIES

19.     Plaintiff Sarah Holm is a citizen and resident of Moorhead, Minnesota, and purchased a Model E33A Power Pod on or around July 2023.

20.     Plaintiff Nicole Slinger is a citizen and resident of Doylestown, Pennsylvania, and purchased a Model E33A Power Pod on or around April and June 2023.

4

21.    Plaintiff Kathleen McDermott is a citizen and resident of Washington D.C., and purchased a Model E33A Power Pod on or around October 2023.

22.    Defendant Casely, Inc. is organized under the laws of New York with its principal place of business located in Brooklyn, New York. Defendant manufactures, markets, and distributes Power Pods across the United States.

## III.    FACTUAL ALLEGATIONS

### A.  *Casely's Power Pods are Defective and Dangerous.*

23.    Defendant began selling its Model E33A Power Pod in March of 2022.

24.    Defendant's Power Pods are portable power banks that are designed to charge cell phones and other electronics while on the go. They are slim—just a quarter of an inch thick—and equipped with "MagSafe" magnetic technology, so they can be attached directly to the back of phones for wireless charging.



*Figure 1*

25.    Casely advertises its Power Pods as "…wireless chargers [built] with safety in mind providing complete protection for you and your devices while charging."[3] Casely goes even further, promoting them as "the ideal solution for life on the go…. their wireless design makes them easy to take anywhere. They can easily fit right into your pocket or a compartment of your bag. You might forget it's even there up until you need it."[4]

26.    Despite these assurances (and many others noted below), the Power Pods were too dangerous to be on the market. On April 17, 2025, after CPSC had received 51 consumer reports

---

[3]    *Power Pod MagSafe Battery Pack Frequently Asked Questions*, Casely
https://www.getcasely.com/collections/power-pods?page=3 (last visited June 6, 2025).
[4] *Id.*

of Power Pods overheating, expanding, and catching fire, and six reports of burn injuries,[5] the Consumer Product Safety Commission and Casely issued a recall covering 429,200 Model E33A Power Pods sold between March 2022 and September 2024.

27.     As part of the recall, Casely's only offer to its customers to remedy the situation is to replace the dangerously defective Power Pod with another Power Pod.[6] This remedy is inadequate as it ignores the likely possibility that customers who have been burned by Casely before (literally and figuratively) do not trust a replacement, and a refund is the only acceptable option.

28.     Further, the terms of the recall require customers who wish to receive a replacement to submit proof of current possession of the Power Pod,[7] ignoring those who disposed of their Power Pod due to this defect (or for any other reason) before the April 17, 2025, recall. Regardless of current possession, these customers (like Plaintiff Holm, Plaintiff Slinger, and numerous other class members) were still damaged by being misled to purchase a product that was worthless and dangerous.

**B.** ***Casely Misled Consumers About the Safety and Quality of the Power Pods***

   ***i.  User Manuals and Safety Instructions***

---

[5] *Casely Recalls Wireless Portable Power Banks Due to Fire and Burn Hazards*, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION (Apr. 17, 2025) https://www.cpsc.gov/Recalls/2025/Casely-Recalls-Wireless-Portable-Power-Banks-Due-to-Fire-and-Burn-Hazards.
[6] *Recall Safety Notice*, CASELY (Apr. 17, 2025) https://www.getcasely.com/pages/2025-recall.
[7] *Id.*

29.     Until as recently as January 2025, Casely's Power Pod User Manual provided no warnings that the Power Pods could overheat under ordinary conditions. In fact, the manual's "Notes & Warnings" section merely stated that it is "normal" if the device heats up.

30.     The current iteration of the Power Pod User Manual (updated in 2025, after the class period) now acknowledges the danger, and includes a fire and burn warning along with a QR code link to safety instructions:



*Figure 2*[8]

31.     In the new warning, Defendant admits the Power Pods become a fire and burn risk at 45 degrees Celsius (or 113 degrees Fahrenheit),[9] whereas previously, the manual stated anything under 55 degrees Celsius (or 131 degrees Fahrenheit) is "normal."[10]

---

[8] *Power Pod User Manual*, CASELY https://support.getcasely.com/product-safety/power-pod-user-manual (last visited June 6, 2025).
[9] It is common for the Power Pods to reach temperature over 113 degrees Fahrenheit on their own when used under normal, temperature-controlled conditions. *See* Jon Walters, *Casely PowerPod MagSafe Battery 2023 REVIEW* MACSOURCES (2023) https://macsources.com/casely-powerpod-magsafe-battery-2023-review/ ("I used a Nubee infrared thermometer and found the surface reached ~114.6 degrees.").
[10] It should be noted that the current "Notes & Warnings" section still contains this contradictory statement. *See Figure 2, second bullet point*.

32.    This is a significant difference. For example, on an 80-degree day, it takes only 40 minutes for the inside of a vehicle to exceed 113 degrees Fahrenheit.[11]

33.    Defendant's design and promotion of its Power Pods are directed for use on-the-go as a consumer generally only needs a Power Pod if he is away from a normal power source. It is reasonably foreseeable for a consumer to leave a Power Pod inside a car when not being used.

34.    Further, Defendant's choice to use Celsius for this warning obfuscates the danger and limits its effectiveness when Power Pods are sold in America, where the average consumer likely would not know the Celsius to Fahrenheit conversion without researching it.

35.    Similar to its User Manual, Defendant's "Power Pod Important Safety Instructions" (the "Safety Instructions") are also inadequate and ineffective.

36.    Between December 2022 and February 2023, Defendant released its first iteration of the Safety Instructions for the Power Pod (the "2023 Safety Instructions")—approximately nine months after Power Pods were first offered for sale.

37.    The 2023 Safety Instructions warranted that the Power Pods had "gone through a quality assurance inspection"[12] and were thus safe and fit for ordinary use.

38.    Other than this assurance and the general warning against "improper use" and "plac[ing] [the Power Pod] in fire or other excessively hot environments,"[13] the 2023 Safety Instructions only reference concerning a risk of fire is to advise a customer concerned about

---

[11] Li Cohen, *How hot does a car get in the sun? Here's why heat can be so deadly in a parked car.* CBS NEWS (July 24, 2023) https://www.cbsnews.com/news/how-hot-does-a-car-get-in-the-sun-heres-why-the-extreme-heat-can-be-so-deadly-in-a-parked-car/.

[12] *Power Pod Important Safety Instructions*, CASELY "2023 Safety Instructions" (published between December 2022 and February 2023) available at https://web.archive.org/web/20230207184211/https://support.getcasely.com/product-questions-specs/power-pod-important-safety-instructions.

[13] *Id.*

excessive heat to contact Casely.[14] (But see *Figure 11* below: when contacting Casely about an excessively hot Power Pod, consumers are told that this is normal, and to merely use their phone less while charging it.)

39.    Nowhere in the 2023 Safety Instructions does it convey the true nature of the Power Pods—that they are a risk of overheating and igniting, causing fires and burns—nor does it give actionable advice on how to mitigate this risk.

40.    At some point between December 2023 and May 2024, Defendant updated the Safety Instructions to the current iteration, which added:

a.    "While charging your phone with your Power Pod, do not place your phone under a blanket, pillow, your body, a purse, or a bag."[15]

b.    "This product should be operated only in open-air conditions. It should not be operated in an enclosed, unventilated space such as a carrying bag, pocket, purse, car or bedding. Failure to follow these instructions may damage the product by overheating."[16]

41.    Casely did not begin warning consumers against using the Power Pod in these ways until 2024, at least one year and nine months after first offering it for sale. However, these warnings were, and are *still*, meaningless because Casely contradicts them by *the manner in which it markets the Power Pods*.

---

[14] *Id.*
[15] *Power Pod Important Safety Instructions*, CASELY "Safety Instructions" (published between December 2023 and May 2024) https://support.getcasely.com/product-safety/power-pod-important-safety-instructions (last accessed June 6, 2025).
[16] *Id.*

### ii.  Marketing

42.     Casely promotes the Power Pods as safe; ideal for use on the go; intended to be used in direct contact with phones, bags, pockets, and hands; and safe to be used and stored in enclosed areas—all uses that are particularly dangerous for fire risks, like these Power Pods, and all uses it now warns *against* in its Safety Instructions.

43.     As demonstrated by *Figure 3*, the Power Pods are advertised as safe for use in a bag. Moreover, the Casely webpage displays Power Pods for sale[17] explaining "[t]hey can easily fit right into your pocket or a compartment of your bag."

44.     Below is an exemplar of Casely's social media marketing of the Power Pods from Casely's official TikTok account:

---

[17] *About Power Pod - MagSafe Battery Pack*, CASELY https://www.getcasely.com/collections/power-pods?page=3 (last accessed May 30, 2025).



*Figure 3*[18]

45.     In fact, Casely's promotion of its Power Pods in contravention to its own Safety Instructions goes beyond merely saying the Power Pods can be used in a closed environment. As recently as December 2, 2024, Casely promoted a tote bag giveaway with purchase of a Power Pod. Not only does Casely promote the Power Pod as safe to be used in a bag (contrary to its own Safety Instructions as depicted in *Figures 3–4*), it even gives customers the bag:

---

[18] Video posted by get.casely (@get.casely), Tɪᴋᴛᴏᴋ, (Sept. 9, 2023),
https://www.tiktok.com/@get.casely/video/7275389650456431914.



*Figure 4*[19]

46.     Casely's social media posts convey a product safe for use outdoors in hot conditions, in direct sunlight, as seen here:

---

[19] Video posted by get.casely (@get.casely), TIKTOK,
https://www.tiktok.com/@get.casely/video/7443907373665717550



*Figure 5*

47.    The Casely website explicitly markets its Power Pods as capable of being taken anywhere, designed to "fit right into your pocket"[20] (also a violation of its own Safety Instructions).

48.    Further, the Casely website and social media continually reinforce that this is a product to be used on-the-go, which inherently warrants that the Power Pods are fit for use in "on-the-go" situations, like a car, bus, plane, pocket, purse, or bag. Such representations, once again, contradict Casely's own Safety Instructions that advise the Power Pods should only be used in "open-air conditions" (i.e. outdoors).

49.    Casely's marketing of its Power Pods misled customers into believing the Power Pods were safe for their intended purpose and could be used in on-the-go situations. In so doing, Casely flatly contradicted what little warning was actually given by the various iterations of the User Manual and Safety Instructions.

**C.    _Casely Knew or Should Have Know the Power Pods Were Dangerous_**

50.    As evidenced by the changes made to User Manual and Safety Instructions (as well as the representation in the Safety Instructions that all Power Pods go through quality assurance inspections), Casely knew or had reason to know of the fire risk its Power Pods posed. But customers, too, informed Casely of this risk repeatedly.

51.    From the initial release date of the Power Pod in March of 2022 until the April 17, 2025 recall, consumers often complained of the extreme heat coming from the Power Pods when

---

[20] _Power Pod MagSafe Battery Pack_, CASELY, https://www.getcasely.com/collections/power-pods?page=3 (last visited June 6, 2025).

used as intended. In fact (as can be seen at the top of *Figure 6*) as of May 30, 2025, there were 376

reviews of Power Pods on the getcasely.com website which mentioned the term hot/heat:



*Figure 6 – March 2022*



*Figure 7 – August 2024*



*Figure 8 – March 2025*

52.    Casely also received complaints about the Power Pods excessive heat on their social media promotions:



*Figure 9*[21]



*Figure 10*[22]

53.    These safety concerns are not posted in unmoderated webpages. Casely has seen and responded with advice on how to handle overheating issues for all of its customers to see.

54.    Casely's typical response is seen below, repeating that the heat is "normal" and advising to merely "keep[] it out of extreme heat and limit[] phone use when charging."

---

[21] Video posted by get.casely (@get.casely), Tɪᴋᴛᴏᴋ, *Get.Casely – New Power Pod Dsigns are Available Now*, https://www.tiktok.com/@get.casely/video/7121756571620609326 (last visited June 6, 2025).
[22] Casely, Fᴀᴄᴇʙᴏᴏᴋ, *5 New Power Pod Designs | Just Launched*, https://www.facebook.com/share/v/19GPorkQqx/ (last visited June 6, 2025).



*Figure 11*

55.     *Figure 11* shows a customer who has a real fear over the exact issue that is the basis of the recall. She says it is "VERY hot," that it "scared" her, and she thought "it might catch on fire," and yet Casely continued to advise that this is "normal" and otherwise did nothing to protect or alert its current or prospective customers as to the true danger for another 16 months until the recall.

56.     On April 17, 2025, (likely in response to the many reviews concerning the hazard posed by its Power Pods), Casely finally acknowledged the danger posed by its Power Pods, and,

along with the Consumer Product Safety Commission, issued recalls for all Power Pods due to the unreasonable risk fire and burns from the Power Pod overheating and igniting.[23]

57.     Defendant's knowing misrepresentations as to the quality of the Power Pods and failure to warn as to the fire hazard posed by them induced Plaintiffs and Class Members to purchase the Power Pods, gave them a false sense of security, and most egregiously, gave them dangerous advice or no advice at all to mitigate fire risk.

58.     Still, even had Defendant made no representations at all other than offering the Power Pods for sale, Defendant still violated its implied warranty that its product was fit for its ordinary, intended use. The Power Pods are too dangerous to be on the market and are effectively worthless.

### D. *__Plaintiffs' Experiences__*

### *Plaintiff Sarah Holm*

59.     Plaintiff Sarah Holm is and has been a resident of Moorhead, Minnesota at all times relevant to this Complaint.

60.     Plaintiff Holm paid $60 for a Model E33A "Falling for You | Plum Floral" Power Pod for personal use in July 2023.

61.     The Defendant did not disclose the possibility of a defective lithium battery overheating, expanding, or burning anywhere on the Power Pod packaging.

---

[23] *Casely Recalls Wireless Portable Power Banks Due to Fire and Burn Hazards*, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION (Apr. 17, 2025) https://www.cpsc.gov/Recalls/2025/Casely-Recalls-Wireless-Portable-Power-Banks-Due-to-Fire-and-Burn-Hazards.

62.     In making her purchase, Plaintiff Holm relied on Casely's marketing and advertising representations, as well as the product packaging concerning the Power Pod's quality, safety, and fitness for use as a portable power bank.

63.     During the time she owned the Power Pod, Plaintiff Holm used it as intended, in a manner typical of a reasonable user of a power bank.

64.     Within only a few months of purchasing the Power Pod, it overheated. Specifically, while using it to charge her phone in her home in accordance with its ordinary and intended use, Plaintiff Holm attempted to pick up her phone and Power Pod. The Power Pod had heated to such an extreme level that Plaintiff Holm could not handle it, causing her to drop it. The Power Pod broke and was thereafter unusable.

65.     Plaintiff Holm's Power Pod contained a defective lithium battery that caused the device to overheat, creating a fire and burn hazard and making it unsuitable for its intended use.

66.     Had Plaintiff Holm known about the dangerous defect, she would not have paid as much for it and, in fact, would not have purchased the Power Pod.

### *Plaintiff Nicole Slinger*

67.     Plaintiff Nicole Slinger is and has been a resident of Doylestown, Pennsylvania at all times relevant to this Complaint.

68.     Plaintiff Slinger paid $60 for a Model E33A "Tie Dying Over You | Purple Marble" Power Pod for her personal use in April 2023.

69.     Plaintiff Slinger paid $51 (after using a promo code) for a second Model E33A "Miami Cabana | Solid Neon Blue" Power Pod for her juvenile son's personal use in June 2023.

70.     The Defendant did not disclose the possibility of a defective lithium battery overheating, expanding, or burning anywhere on the Power Pod packaging.

71.     In making her purchases, Plaintiff Slinger relied on Casely's marketing and advertising representations, as well as the product packaging concerning the Power Pod's quality, safety, and fitness for use as portable power banks when making her purchase.

72.     During the time she owned the Power Pods, Plaintiff Slinger and her son used them as intended, in a manner typical of a reasonable user of a power bank.

73.     Within about four months of purchasing the Power Pods, they began to overheat. When using it to charge her phone in accordance with its ordinary and intended use, Plaintiff Slinger noticed that her Power Pod would get so hot that she could not touch it while it was charging her phone without burning her hand. Her juvenile son noted the same overheating in his Power Pod and similarly could not touch his while it was charging without burning his hand. In early 2024, Plaintiff Slinger noticed that neither Power Pod was charging their phones, and her son's Power Pod had begun to melt from the inside and around the USB-C port, to the extent that he could no longer plug it in. From these observations, Plaintiff Slinger decided the Power Pods were dangerous and disposed of them.

74.     Plaintiff Slinger's Power Pods contained defective lithium batteries that caused the devices to overheat, creating a fire and burn hazard and making them unsuitable for their intended use.

75.     Had Plaintiff Slinger known about the dangerous defects, she would not have paid as much for them and, in fact, would not have purchased the Power Pods.

***Plaintiff Kathleen McDermott***

76.     Plaintiff Kathleen McDermott is and has been a resident of Washington, D.C., at all times relevant to this Complaint.

77.     Plaintiff McDermott paid $60 for a Model E33A "Chartreuse Days | Solid Neon Yellow" Power Pod for her personal use in October 2023.

78.     The Defendant did not disclose the possibility of a defective lithium battery overheating, expanding, or burning anywhere on the Power Pod packaging.

79.     In making her purchase, Plaintiff McDermott relied on Casely's marketing and advertising representations, as well as the product packaging concerning the Power Pod's quality, safety, and fitness for use as a portable power bank when making her purchase.

80.     During the time she owned the Power Pod, Plaintiff McDermott used it as intended, in a manner typical of a reasonable user of a power bank.

81.     Shortly after purchasing the Power Pod, Plaintiff McDermott noticed it getting extremely hot when she used it. Because of the heat, Plaintiff McDermott would only use her Power Pod when absolutely necessary, and she began to put it in areas where it could not contact anything that might start a fire. The heat of the Power Pod also prevented it from charging her phone effectively, as she originally bargained for. In May 2025, Plaintiff McDermott learned of the Power Pod recall and ceased using it.

82.     Plaintiff McDermott's Power Pod contained a defective lithium that caused the device to overheat, creating a fire and burn hazard and making it unsuitable for its intended use.

83.     Had Plaintiff McDermott known about the dangerous defect, she would not have paid as much for it and, in fact, would not have purchased the Power Pod.

IV.     **CLASS ACTION ALLEGATIONS**

84.    Plaintiffs bring this action pursuant to Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure on behalf of All persons residing in the United States who owned one or more Power Pods subject to the April 17, 2025 recall.[24]

85.    Plaintiff Holm also brings this action on behalf of herself and a Minnesota State Sub-Class defined as follows: All persons residing in Minnesota who owned one or more Power Pods subject to the April 17, 2025 recall.[25]

86.    Plaintiff Slinger also brings this action on behalf of herself and a Pennsylvania State Sub-Class defined as follows: All persons residing in Pennsylvania who owned one or more Power Pods subject to the April 17, 2025 recall.[26]

87.    Plaintiff McDermott also brings this action on behalf of herself and a Washington D.C. sub-class. All persons residing in Washington D.C. who owned one or more Power Pods subject to the April 17, 2025 recall.[27]

88.    Excluded from the Classes are Defendant, its parents, subsidiaries, affiliates, officers, and directors, any entity in which Defendant has a controlling interest, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

89.    This action is brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

90.    **Numerosity** – Federal Rule of Civil Procedure 23(a)(1). The Class Members are so numerous that their individual joinder would be impracticable. The Classes each comprise at

---

[24] Plaintiffs reserve the right to amend this class definition as this litigation progresses.
[25] Plaintiffs reserve the right to amend this class definition as this litigation progresses.
[26] Plaintiffs reserve the right to amend this class definition as this litigation progresses.
[27] Plaintiffs reserve the right to amend this class definition as this litigation progresses.

least thousands of consumers. The precise number of Class Members, and their addresses, are unknown to Plaintiffs at this time, but can be ascertained from Defendant's records and/or retailer records. The Class Members may be notified of the pendency of this action by mail or email, supplemented (if deemed necessary or appropriate by the Court) by published notice.

91.      **Existence and Predominance of Common Questions of Law and Fact** – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3). Common questions of law and fact exist as to all Class Members. These questions predominate over the questions affecting only individual Class Members. These questions, each of which may also be certified under Rule 23(c)(4), include, without limitation:

a.  Whether Defendant negligently failed to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution, and/or sale the Power Pods;

b.  Whether Defendant sold Power Pods that were unreasonably dangerous to consumers such as Plaintiffs and Class Members;

c.  Whether Defendant failed to adequately warn Plaintiffs and the Classes of the dangers with respect to the Power Pods;

d.  Whether Defendant was negligent for failure to warn;

e.  Whether Defendant knew or should have known that the Power Pods were defective, unsafe and unsuitable for use as intended;

f.  Whether Defendant failed to employ quality control measures and failed to properly manufacture, test and/or inspect its Power Pods before distribution and sale;

g.  Whether and when Defendant learned or should have learned of the defect in the Power Pods;

h.  Whether Defendant made affirmative misrepresentations and/or false and misleading statements regarding the Power Pods;

i.  Whether Defendant failed to disclose material facts regarding the Power Pods;

j.   Whether Defendant made negligent misrepresentations in connection with the distribution and sale of the Power Pods;

k.   Whether Defendant breached express warranties in connection with the distribution and sale of the Power Pods;

l.   Whether Defendant breached the implied warranty of merchantability in connection with the distribution and sale of the Power Pods;

m.  Whether Defendant violated the state consumer protection statutes alleged herein;

n.   Whether Defendant was unjustly enriched;

o.   The nature of the relief, including damages and equitable relief, to which Plaintiffs and the Class Members are entitled; and

p.   Whether Defendant is liable for attorneys' fees and costs.

92.    The questions set forth above predominate over any questions affecting only individual persons concerning sales of Defendant's Power Pods throughout the United States and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to the other available methods for the fair and efficient adjudication of Plaintiff's claims.

93.    **Typicality** – Federal Rule of Civil Procedure 23(a)(3). Plaintiffs' claims are typical of the claims of the Classes because Plaintiffs, like all other Class Members, purchased Defendant's Power Pods, suffered damages as a result of those purchases, and seeks the same relief as the proposed Class Members.

94.    **Adequacy** – Federal Rule of Civil Procedure 23(a)(4). Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Class Members and have retained counsel competent and experienced in complex class action, including

26

consumer litigation and product litigation. Plaintiffs and their counsel will fairly and adequately protect the interest of the Class Members.

95.    **Superiority** – Federal Rule of Civil Procedure 23(b)(3). A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class Members.  There is no special interest in Class Members individually controlling the prosecution of separate actions.  The damages suffered by individual Class Members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  Further, it would be virtually impossible for the Class Members individually to redress effectively the wrongs done to them.  And, even if Class Members themselves could afford such individual litigation; the court system could not, given the thousands of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments.  Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

96.    **Insufficiency of Separate Actions** – Federal Rule of Civil Procedure 23(b)(1). In Absent a representative class action, Class Members would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding

27

their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1). Counsel is experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

97.    **Declaratory and Injunctive Relief** – Federal Rule of Civil Procedure 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class Members as described below, with respect to the Class Members as a whole. In particular, Plaintiffs seeks to certify the Classes to enjoin Defendant from selling or otherwise distributing the Power Pods until such time that Defendant can demonstrate to the Court's satisfaction that the Power Pods confer the advertised benefits and are otherwise safe to use as intended.

## V.    CAUSES OF ACTION

### COUNT I
### Negligence
### (On Behalf of the Nationwide Class and all Sub-Classes )

98.    Plaintiffs incorporate by reference paragraphs 1–97 of this Complaint and restates them as if fully set forth herein.

99.    Defendant owed a duty of due care to Plaintiffs and the Class Members to produce a product that was safe for its intended use. Defendant breached that duty which caused Plaintiffs harm, resulting in damages.

100.    Defendant is the manufacturer, seller, and distributor of the Power Pods purchased by Plaintiffs and Class Members.

101.    Defendant had a duty to take reasonable care in the manufacture, formulation, sourcing, testing, inspection, marketing, distribution, and the sale of its Power Pods.

28

102.    By the actions and omissions alleged herein, Defendant breached its duty. Among other things, Defendant manufactured, marketed, sold, and distributed Power Pods that were unsafe and unsuitable for their intended use. Defendant knew or should have known that the defective Power Pods were a fire hazard and unreasonable risk of injury and property damage and thus worthless.

103.    Plaintiffs and Class Members are Casely customers who purchased the Power Pods and whom Casely knew or should have known could suffer injury due to the defective lithium batteries contained in its Power Pods.

104.    As a result of Defendant's breaches and violations, Plaintiffs and Class Members suffered injury in that they have been deprived of their benefit of the bargain. Plaintiffs' and Class Members injuries were caused in fact by Defendant's breach. But for Defendant's negligent manufacturing and improper oversight, Plaintiffs would not have been injured.

105.    At all relevant times, Plaintiffs and Class Members acted lawfully and with due care and did not contribute to the injuries.

106.    Accordingly, Plaintiffs and Class Members are entitled to damages and other appropriate relief, as prayed for hereunder.

## COUNT II
### Breach of Express Warranty
### (On Behalf of the Nationwide Class and all Sub-Classes)

107.    Plaintiffs incorporate by reference all above paragraphs 1–97 of this Complaint and restate them as if fully set forth herein.

108.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant for breach of express warranty.

109.    Defendant marketed and sold the Power Pods into the stream of commerce with the intent that the Power Pods would be purchased by Plaintiffs and Class Members.

110.    Plaintiffs and Class Members formed a contract with Defendant at the time they purchased the Power Pods.

111.    Defendant expressly warranted, advertised, and represented to Plaintiffs and Class Members that the Power Pods were and are high quality, safe, and suitable for their intended use.

112.    Defendant made these express warranties regarding the Power Pods' quality, materials, and suitability for use in writing through its website, advertisements, and marketing materials and on the Power Pods' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and Class Members entered into upon purchasing the Power Pods.

113.    Defendant's warranties, advertisements, and representations were made in connection with the sale of the Power Pods to Plaintiffs and Class Members. Plaintiffs and Class Members relied on Defendant's warranties, advertisements, and representations regarding the Power Pods in deciding whether or not to purchase Defendant's Power Pods.

114.    Defendant's Power Pods do not conform to Defendant's warranties, advertisements, and representations in that they are not safe or appropriate for use, as they contain a defect causing an unreasonable risk of fire and burns.

115.    Defendant was on notice of this breach, as Defendant was aware of the dangerous defect in the Power Pods due to its own knowledge and expertise, and/or based on numerous consumer complaints as alleged herein that revealed the Power Pods as unsafe for their intended use.

116.    Affording Defendant a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Defendant had known of and concealed the safety of its Power Pods.

117.    Privity exists because Defendant expressly warranted to Plaintiffs and Class Members through the warranting, website, packaging, advertising, marketing, and labeling that the Power Pods were high quality, safe, and suitable for ordinary use, and by failing to make any mention of potential dangers.

118.    Plaintiffs and Class Members would not have purchased the Power Pods had they known the true nature of the risk of the Power Pods to overheat, burn, and otherwise malfunction for those who use them as intended.

119.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered actual damages in that they purchased Power Pods that were worth less than the price they paid.

120.    Plaintiffs and Class Members seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

### COUNT III
### Breach of Implied Warranty
### (On Behalf of the Nationwide Class and all Sub-Classes)

121.    Plaintiffs incorporate by reference paragraphs 1–97 of this Complaint and restate them as if fully set forth herein.

122.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

31

123. Defendant is engaged in the business of designing, manufacturing, constructing, making, selling, distributing, labeling, advertising, retailing, and/or otherwise placing the Product into the stream of commerce.

124. Power Pods are and were at all relevant times "goods" within the meaning of various state statutes set forth herein.

125. Defendant's warranty expressly applies to the purchaser of the Product, creating privity between Defendant, Plaintiffs and Class Members.

126. However, privity is not required because Plaintiffs and Class Members are the intended beneficiaries of Defendant's warranties and its sale through retailers. Defendant's retailers were not intended to be the ultimate consumers of the Power Pods and have no rights under the warranty agreements. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiffs and Class Members.

127. Defendant has been provided sufficient notice of its breaches of implied warranties associated with the Power Pods. Defendant was put on constructive notice of its breach through its review of consumer complaints and other reports.

128. Had Plaintiffs, Class Members, and the consuming public known that the Power Pods could cause harm, they would not have purchased the Power Pods or would have paid less for it.

129. Plaintiffs and Class Members would not have purchased the Power Pods had they known the true nature of the risk of the Power Pods to overheat, burn, and otherwise malfunction for those who use them as intended.

32

130.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered actual damages in that they have purchased Power Pods that are worth less than the price they paid.

131.    Plaintiffs and Class Members seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

**COUNT IV**
**Breach of Implied Warranty of Merchantability**
**(On Behalf of the Nationwide Class and all Sub-Classes)**

132.    Plaintiffs incorporate by reference paragraphs 1-97 of this Complaint and restate them as if fully set forth herein.

133.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

134.    At all relevant times, Defendant was the merchant, developer, manufacturer, marketer, warrantor, and/or seller of the Power Pods. Defendant knew or had reason to know of the specific use for which the Power Pods were purchased.

135.    Plaintiffs purchased the Power Pods manufactured and marketed by Defendant at retailers and online retailers for retail sale to consumers throughout the United States.

136.    Power Pods are and were at all relevant times "goods" within the meaning of various state statutes set forth herein.

137.    An implied warranty that the Power Pods were merchantable arose by operation of law as part of the sale of the Power Pods.

138.    Defendant impliedly warranted to Plaintiffs and the Classes that the Power Pods were of merchantable quality, fit for their ordinary use, and conformed to the messaging,

33

characterizations, promises, and affirmations of fact made on the Power Pods' packaging, labels, websites, and/or advertisements, including that the product was high quality, safe, and suitable for ordinary use. The Power Pods, at all times when they were sold, were not in merchantable condition and were and are not fit for the ordinary purpose of providing a safe portable charging power bank. The Power Pods were and are not safe for use because they contain a dangerous defect causing them to overheat and ignite, posing fire and burn hazards.

139.    Plaintiffs and Class Members relied on such messaging, characterizations, promises, and affirmations of fact when they purchased the Power Pods. Contrary to Defendant's representations and warranties, the Power Pods were not fit for their ordinary use and did not conform to Defendant's affirmations of fact and promises as they contained a dangerous defect which did not conform to the packaging and advertising of the product.

140.    As a consequence, Defendant breached its implied warranties upon selling such Power Pods as each product contained such dangerous defect.

141.    Defendant cannot disclaim its implied warranty as it knowingly sold unsafe and hazardous Power Pods.

142.    Defendant was on notice of this breach, as Defendant was aware of the fire hazard defect in the Power Pods due to its knowledge and expertise, and/or based on numerous consumer complaints as alleged herein that revealed the Power Pods as unsafe for their intended use.

143.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and Class Members have been damaged in an amount to be proven at trial.

144.    Plaintiffs and Class Members have been excused from performance of any warranty obligations as a result of Defendant's conduct described herein.

145.    Privity exists because Defendant impliedly warranted to Plaintiffs and Class Members through the warranting, website, packaging, advertising, marketing, and labeling that the Power Pods were high quality, safe, and suitable for ordinary use, and by failing to make any mention of potential dangers

146.    Nonetheless, privity is not required here because Plaintiffs and each Class member are intended third-party beneficiaries of contracts between Defendant and its distributors and buyers, and of their implied warranties. The distributors and buyers were not intended to be the ultimate consumers of the Power Pods and have no rights under the warranties of the Power Pods; the warranties were designed for and intended to benefit consumers only.

147.    Plaintiffs and Class Members would not have purchased the Power Pods had they known the true nature of the risk of the Power Pods injuring those who use them as intended.

148.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered actual damages in that they have purchased Power Pods that are worth less than the price they paid.

149.    Plaintiffs and Class Members seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## COUNT V
### Fraudulent Concealment - Fraud by Omission
### (On Behalf of the Nationwide Class and all Sub-Classes)

150.    Plaintiffs incorporate by reference paragraphs 1-97 all other paragraphs of this Complaint and restate them as if fully set forth herein.

151.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant for fraud by omission.

152.    Defendant concealed from and failed to disclose to Plaintiffs and Class Members that the Power Pods contained a dangerous defect causing them to overheat and ignite and do not conform to the Power Pods' labels, packaging, advertising, and statements, including, but not limited to, representations that they were high quality, safe, and suitable for ordinary use.

153.    Defendant was under a duty to disclose to Plaintiffs and Class Members the true quality, characteristics, and suitability of the Power Pods because: (1) Defendant was in a superior position to know the true state of facts about its Power Pods; (2) Defendant was in a superior position to know the actual materials, characteristics, and suitability of the Power Pods for use as a portable power bank; (3) Defendant had exclusive knowledge of its own design, manufacturing, and testing process in which it knew of the dangerous defect in its Power Pods; and/or (4) Defendant knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover that the Power Pods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Power Pods.

154.    The facts concealed or not disclosed by Defendant to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Power Pods. No reasonable consumer would have purchased the Power Pods had Defendant adequately and fully disclosed the truth.

155.    Defendant knew that this omission was material information that Plaintiffs and Class Members required, and Defendant intentionally omitted and failed to disclose this information to induce the Plaintiffs and Class Members to purchase its Power Pods.

156.    Plaintiffs and Class Members did not know or suspect that Defendant's Power Pods were unsafe.

157.    Plaintiffs and Class Members justifiably relied on Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and materials of the Power Pods, which are inferior when compared to how the Power Pods are advertised and represented by Defendant.

158.    Plaintiffs and Class Members would not have purchased the Power Pods had they known the true nature of the risk of the Power Pods injuring those who use them as intended.

159.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered actual damages in that they have purchased Power Pods that are worth less than the price they paid.

160.    Plaintiffs and Class Members seek actual and punitive damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## COUNT VI
### Failure to Warn – Strict Liability
### (On Behalf of the Nationwide Class and all Sub-Classes)

161.    Plaintiffs incorporate by reference paragraphs 1-97 of this Complaint and restate them as if fully set forth herein.

162.    Defendant had a duty to warn Plaintiffs and Class Members regarding the defect in the Power Pods causing them to overheat and ignite. Defendant, which is engaged in the business of selling, manufacturing and supplying the Power Pods, placed them into the stream of commerce

in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the Power Pods.

163.    The Power Pods supplied to Plaintiffs and Class Members were defective in design and formulation and unreasonably dangerous when they left the hands of Defendant and reached consumers, including Plaintiffs and Class Members, without substantial alteration in the condition in which they were sold.

164.    Defendant failed to provide adequate warnings regarding the risks of the Power Pods after knowledge of the Defect was known only to them.

165.    Defendant possessed information regarding the true risks of the Power Pods but failed to warn Plaintiffs and Class Members and/or failed to strengthen their warnings.

166.    Despite their knowledge of the dangerous defect and obligation to unilaterally warn and/or strengthen their warnings, Defendant instead chose to actively conceal this knowledge from the public.

167.    Plaintiffs and Class Members would not have purchased, chosen, and/or paid for all or part of the Power Pods if they knew of the defect and the risks of purchasing the Power Pods.

168.    This defect proximately caused Plaintiffs' and Class Members' damages.

169.    Plaintiffs and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

**COUNT VII**
**Negligent Misrepresentation**
**(On Behalf of the Nationwide Class and all Sub-Classes)**

170.    Plaintiffs incorporate by reference paragraphs 1-97 of this Complaint and restates them as if fully set forth herein.

171.    Defendant's actions and omissions alleged herein constitute negligent misrepresentation.

172.    Defendant misrepresented material facts concerning the safety, suitability, and quality of its Power Pods, including that the Power Pods were high quality, safe, and suitable for their intended use.

173.    Defendant knew or should have known but failed to disclose that, contrary to its representations, the Power Pods contained a defect that caused a risk the Power Pods would overheat and ignite, causing injury or property damage.

174.    Defendant made such misrepresentations with the intent to induce Plaintiffs and Class Members to rely on its misrepresentations and purchase Power Pods containing a dangerous defect.

175.    Plaintiffs and Class Members had no knowledge of the falsity of Defendant's representations and reasonably believed them to be true. In justified reliance on Defendant's misrepresentations, Plaintiffs and Class Members purchased and used the Power Pods containing the dangerous defect.

176.    As a direct and proximate consequence, Plaintiffs and Class Members suffered harm. Among other things, they would not have purchased Defendant's Power Pods or would have paid less had they known of the presence, or the potential presence, of dangerous defects.

177.    Plaintiffs and Class Members are therefore entitled to damages and relief, as prayed for hereunder.

**COUNT VIII**
**Design and Formulation Defect – Strict Liability**
**(On Behalf of the Nationwide Class and all Sub-Classes)**

178.    Plaintiffs incorporate by reference paragraphs 1-97 of this Complaint and restate them as if fully set forth herein.

179.    The Power Pods supplied to Plaintiffs and Class Members were defective in design and formulation and unreasonably dangerous.

180.    The defective design and formulation of the Power Pods rendered it a fire hazard, not reasonably fit, suitable, or safe for their intended purpose.

181.    The risk of fire hazard contained within the Power Pods outweighed the benefits and rendered the Power Pods unreasonably dangerous, unfit for use, and unfit to even possess.

182.    The Power Pods were defective because their design and formulation included a defect which can cause them to overheat and ignite, posing a fire and burn hazard. After Defendant knew or should have known of the fire risk found in the Power Pods, Defendant continued to promote the Power Pods as safe and effective to the Plaintiffs, Class Members, and public.

183.    There are other power banks that are safe and do not contain a similar defect making it a fire hazard unfit for its ordinary use.

184.    The Power Pods did not perform as an ordinary consumer would expect.

185.    Defendant's negligent design/formation of the Power Pods is the proximate cause of Plaintiffs' and Class Members' damages.

186.    Plaintiffs and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

40

## COUNT IX
### Unjust Enrichment
### (On Behalf of the Nationwide Class and all Sub-Classes)

187.    Plaintiffs incorporate by reference paragraphs 1-97 of this Complaint and restate them as if fully set forth herein.

188.    Plaintiffs and Class Members conferred benefits upon Defendant. Plaintiffs and Class Members paid money for Defendant's Power Pods that were not as represented; they were not suitable for ordinary use; and/or they did not meet Defendant's guarantees promising safe and reliable power source.  Defendants have unjustly retained the benefits conferred upon them by Plaintiffs and Class Members.

189.    Defendant retained that benefit under circumstances that make it inequitable for it to retain such benefit. Specifically, Defendant retained that benefit even though its Power Pods contain a dangerous defect causing them to overheat and ignite.  If Plaintiffs and Class Members had known the true nature of the Power Pods, they would not have paid money for them or would have paid less.

190.    Plaintiffs and Nationwide Class Members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

## COUNT X
### Violation of Minnesota's Prevention of Consumer Fraud Act,
### Minn. Stat. Ann. § 325F.69, et seq.
### (On Behalf of Minnesota State Sub-Class)

191.    Plaintiff Holm ("Plaintiff" for purposes of this Count) incorporates by reference paragraphs 1-97 set forth above as if fully written herein.

192.    Plaintiff brings this claim on behalf of the Minnesota State Class (the "Class" for purposes of this Count). Plaintiff and Class Members are Minnesota citizens and natural persons and therefore "consumers" under Minn. Stat. Ann. § 325F.70.

193.    The Minnesota Prevention of Consumer Fraud Act ("MCFA") prohibits fraud, misrepresentation, deceptive or unfair practices in connection with the sale of any merchandise. Minn. Stat. Ann. § 325F.69.

194.    The Power Pods offered for sale, and sold by, Defendant are an objects, wares, or goods and therefore are "merchandise" pursuant to Minn. Stat. Ann. § 325F.68.

195.    Defendant marketed and sold its Power Pods to individuals in Minnesota for personal and household use.

196.    In the course of its business, Defendant made affirmative misrepresentations regarding the Power Pods that were deceptive and/or unconscionable. Specifically, Defendant represented that the Power Pods were suitable and safe for ordinary use as a portable power bank. Defendant, however, failed to disclose material facts, namely, that the Power Pods contained, or might contain, a dangerous defect creating an unreasonable risk of fire. Defendant had a duty to disclose this material fact because the Power Pods were unsafe and because Defendant made affirmative representations about the Power Pods. If Plaintiffs and Class Members had known that the Power Pods contained the defect, Plaintiffs would not have purchased the Power Pods.

197.    Defendant employed fraud, unfair and unconscionable practices, false pretense, false promise, misrepresentation, misleading statements, and deceptive practices with the intent that others rely thereon in connection with the sale of its Power Pods by representing the Power

Pods as safe and fit for ordinary use, and by failing to disclose and actively concealing the dangers and fire risk of the Power Pods.

198.    Plaintiffs and Class Members had no way of discerning that Defendant's representations were false and misleading because Plaintiffs and Class Members did not have access to Defendant's internal documents regarding design, manufacture, or testing of the Power Pods.

199.    Defendant thus violated the MCFA by making statements, that, when considered as a whole from the perspective of the reasonable consumer, conveyed that the Power Pods were safe and suitable for their ordinary intended use. Defendant also failed to disclose and warn that the Power Pods were unsafe and unsuitable and that the Power Pods contained, or might contain, a dangerous defect causing a fire hazard.

200.    From March 2022 until the April 17, 2025 recall, Defendant received hundreds of complaints from customers alarmed about the excessive heat of the Power Pods, but still Defendant gave no warning as to the true nature of the product; continued to market, advertise, and sell them as fit for ordinary use as a portable power bank; and further misled concerned customers that the heat was "normal."

201.    Defendant intentionally and knowingly misrepresented material facts regarding the Power Pods with intent to mislead Plaintiff and the Class.

202.    Defendant knew or should have known that its conduct violated the MCFA.

203.    Defendant owed Plaintiff and the Class a duty to disclose the true and unsafe nature of the Power Pods.

43

204.    Defendant's concealment of the true characteristics of the Power Pods was material to Plaintiff and the Class.

205.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Class, about the true nature of the Power Pods.

206.    Defendant's violations present a continuing risk to Plaintiff, the Class, and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

207.    Plaintiff and the Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations, concealment of, and failure to disclose material information.

208.    As a direct and proximate result of Defendant's violations of the MCFA, Plaintiff and the Class have suffered injury-in-fact and/or actual damage.

209.    Pursuant to Minn. Stat. Ann. § 325F.70, Plaintiff and Class Members seek monetary relief against Defendant to recover damages in an amount to be determined at trial, together with costs and disbursements, including costs of investigation and reasonable attorney fees, and any other equitable relief as determined by the court.

**COUNT XI**
**Violation of Minnesota's Deceptive Trade Practices Act**
**Minn. Stat. Ann. § 325D.44, et seq.**
**(On Behalf of Minnesota State Sub-Class)**

210.    Plaintiff Holm ("Plaintiff" for purposes of this Count) incorporates by reference paragraphs 1-97 above as if fully written herein.

44

211.    Plaintiff brings this claim on behalf of the Minnesota State Class (the "Class" for purposes of this Count).

212.    The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices in the course of business, vocation, or occupation. Minn. Stat. Ann. § 325D.44.

213.    In the course of its business, Defendant made affirmative misrepresentations regarding the Power Pods that were deceptive and/or unconscionable. Specifically, Defendant represented that the Power Pods were suitable and safe for ordinary use as a portable power bank. Defendant, however, failed to disclose material facts, namely, that the Power Pods contained, or might contain, a dangerous defect creating an unreasonable risk of fire. Defendant had a duty to disclose this material fact because the Power Pods were unsafe and because Defendant made affirmative representations about the Power Pods. If Plaintiffs and Class Members had known that the Power Pods contained the defect, Plaintiff would not have purchased the Power Pods.

214.    By misrepresenting the Power Pods as safe and suitable for ordinary use, and by failing to disclose and actively concealing the dangerous defect, Defendants engaged in one or more of the following deceptive trade practices prohibited by Minn. Stat. Ann. § 325D.44:

      a.    Representing that the Power Pods have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;

      b.    Representing that the Power Pods are of a particular standard, quality or grade, when they are of another;

      c.    Advertising the Power Pods with intent not to sell them as advertised; and

    d.   Engaging in any conduct which similarly creates a likelihood of confusion or of misunderstanding.

Minn. Stat. Ann. § 325D.44 (5), (7), (9), (14).

215.    Plaintiff and Class Members had no way of discerning that Defendant's representations were false and misleading because Plaintiff and Class Members did not have access to Defendant's internal documents regarding design, manufacture, or testing of the Power Pods.

216.    Defendant thus violated the Minnesota DTPA by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the Power Pods were safe and suitable for their ordinary intended use. Defendant also failed to disclose and warn that the Power Pods were unsafe and unsuitable and that the Power Pods contained, or might contain, a dangerous defect causing a fire hazard.

217.    From March 2022 until the April 17, 2025 recall, Defendant received hundreds of complaints from customers alarmed about the excessive heat of the Power Pods, but still Defendant gave no warning as to the true nature of the product; continued to market, advertise, and sell them as fit for ordinary use as a portable power bank; and further misled concerned customers that the heat was "normal."

218.    Defendant intentionally and knowingly misrepresented material facts regarding the Power Pods with intent to mislead Plaintiff and the Class.

219.    Defendant knew or should have known that its conduct violated the Minnesota DTPA.

220.    Defendant owed Plaintiff and the Class a duty to disclose the true and unsafe nature of the Power Pods.

221.    Defendant's concealment of the true characteristics of the Power Pods was material to Plaintiff and the Class.

222.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Class, about the true nature of the Power Pods.

223.    Defendant's violations present a continuing risk to Plaintiff, the Class, and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

224.    Plaintiff and the Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information.

225.    As a direct and proximate result of Defendant's violations of the Minnesota DTPA, Plaintiff and the Class have suffered injury-in-fact and/or actual damage.

226.    Pursuant to Minn. Stat. Ann. § 325D.45 and Minn. Stat. Ann. § 8.31 subd. 1 and 3a, Plaintiff and Class Members seek monetary relief against Defendant to recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, injunctive relief, and any other equitable relief as determined by the court.

**COUNT XII**
**Violation of Pennsylvania's Unfair Trade Practices Act,**
**73 Pa. Stat. Ann. § 201-1, et seq.**
**(On Behalf of Pennsylvania State Sub-Class)**

227.    Plaintiff Slinger ("Plaintiff" for purposes of this Count) incorporates by reference paragraphs 1-97 above as if fully written herein.

228.    Plaintiff and Class Members purchased the Power Pods from Defendant for personal, household use.

229.    Plaintiff brings this claim on behalf of the Pennsylvania State Class (the "Class" for purposes of this Count).

230.    The Pennsylvania Unfair Trade Practices Act ("Pennsylvania UTPA") prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce. 73 Pa. Stat. Ann. § 201-3.

231.    In the course of its business, Defendant made affirmative misrepresentations regarding the Power Pods that were deceptive and/or unconscionable. Specifically, Defendant represented that the Power Pods were suitable and safe for ordinary use as a portable power bank. Defendant, however, failed to disclose material facts, namely, that the Power Pods contained, or might contain, a dangerous defect creating an unreasonable risk of fire. Defendant had a duty to disclose this material fact because the Power Pods were unsafe and because Defendant made affirmative representations about the Power Pods. If Plaintiffs and Class Members had known that the Power Pods contained the defect, Plaintiff would not have purchased the Power Pods.

232.    By misrepresenting the Power Pods as safe and suitable for ordinary use, and by failing to disclose and actively concealing the dangerous defect, Defendants engaged in one or more of the following unfair or deceptive acts or practices prohibited by 73 Pa. Stat. Ann. § 201-3:

      a.    Representing that the Power Pods have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;

    b.   Representing that the Power Pods are of a particular standard, quality or grade, when they are of another;

    c.   Advertising the Power Pods with intent not to sell them as advertised; and

    d.   Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 Pa. Stat. Ann. § 201-2 (4)(v), (vii), (ix), and (xxi).

233.    Plaintiff and Class Members had no way of discerning that Defendant's representations were false and misleading because Plaintiff and Class Members did not have access to Defendant's internal documents regarding design, manufacture, or testing of the Power Pods.

234.    Defendant thus violated the Pennsylvania UTPA by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the Power Pods were safe and suitable for their ordinary intended use. Defendant also failed to disclose and warn that the Power Pods were unsafe and unsuitable and that the Power Pods contained, or might contain, a dangerous defect causing a fire hazard.

235.    From March 2022 until the April 17, 2025 recall, Defendant received hundreds of complaints from customers alarmed about the excessive heat of the Power Pods, but still Defendant gave no warning as to the true nature of the product; continued to market, advertise, and sell them as fit for ordinary use as a portable power bank; and further misled concerned customers that the heat was "normal."

236.    Defendant intentionally and knowingly misrepresented material facts regarding the Power Pods with intent to mislead Plaintiff and the Class.

237.    Defendant knew or should have known that its conduct violated the Pennsylvania UTPA.

238.    Defendant owed Plaintiff and the Class a duty to disclose the true and unsafe nature of the Power Pods.

239.    Defendant's concealment of the true characteristics of the Power Pods was material to Plaintiff and the Class.

240.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Class, about the true nature of the Power Pods.

241.    Defendant's violations present a continuing risk to Plaintiff, the Class, and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

242.    Plaintiff and the Class purchased their Power Pods based on their review of Defendant's representations in its marketing, advertising, and packaging that these Power Pods were fit for ordinary use as a portable power bank and suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information.

243.    As a direct and proximate result of Defendant's violations of the Pennsylvania UTPA, Plaintiff and the Class have suffered injury-in-fact and/or actual damage.

244.    Pursuant to 73 Pa. Stat. Ann. § 201-9.2, Plaintiff and Class Members seek monetary relief against Defendant to recover damages in an amount three times the actual damages sustained

or one hundred dollars ($100), whichever is greater, together with costs and reasonable attorney fees, and any other equitable relief as determined by the court.

## COUNT XIII
### Violation of District of Columbia's Consumer Protection Procedures Act, D.C. Code Ann. § 28-3904 (On Behalf of District of Columbia Sub-Class)

245.    Plaintiff McDermott ("Plaintiff" for the purposes of this Count) incorporates by reference paragraphs 1-97 set forth above as if fully written herein.

246.    Plaintiff brings this claim on behalf of the D.C. Class (the "Class" for purposes of this Count).

247.    The District of Columbia's Consumer Protection Procedures Act, D.C. Code Ann. § 28-3904 ("DC CPPA"), prohibits unfair or deceptive trade practices.

248.    Defendant made affirmative misrepresentations regarding its Power Pods that were deceptive and/or unconscionable. Specifically, Defendant represented that the Power Pods were suitable and safe for ordinary use as a portable power bank when, in reality, the Power Pods contained, or may have contain, a dangerous defect creating an unreasonable risk of fire. Defendant had a duty to disclose this material fact because the Power Pods were unsafe and because Defendant made affirmative representations about the Power Pods. If Plaintiffs and Class Members had known that the Power Pods contained the defect, Plaintiff would not have purchased the Power Pods.

249.    By misrepresenting the Power Pods as safe and suitable for ordinary use, and by failing to disclose and actively concealing the dangerous defect, Defendants engaged in the following unfair or deceptive acts or practices prohibited by D.C. Code Ann. § 28-3904:

51

    e.   Representing that the Power Pods have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;

    f.   Representing that the Power Pods are of particular standard, quality, grade, style, or model, if in fact they are of another;

    g.   Misrepresenting the Power Pods as to a material fact which has a tendency to mislead;

    h.   Failing to state a material fact about the Power Pods which tends to mislead; and

    i.   Advertising the Power Pods without the intent to sell them or without the intent to sell them as advertised or offered.

D.C. Code Ann. § 28-3904(a), (d), (e), (f), (h)

250.    Plaintiff and Class Members had no way of discerning that Defendant's representations were false and misleading because Plaintiff and Class Members did not have access to Defendant's internal documents regarding design, manufacture, or testing of the Power Pods.

251.    Defendant thus violated the DC CPPA by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the Power Pods were safe and suitable for their ordinary intended use. Defendant also knowingly failed to disclose and warn that the Power Pods were unsafe and unsuitable and that the Power Pods contained, or might contain, a dangerous defect causing a fire hazard.

252.    From March 2022 until the April 17, 2025 recall, Defendant received hundreds of complaints from customers alarmed about the excessive heat of the Power Pods, but still Defendant gave no warning as to the true nature of the product; continued to market, advertise, and sell them

as fit for ordinary use as a portable power bank; and further misled concerned customers that the heat was "normal."

253. Defendant intentionally and knowingly misrepresented material facts regarding the Power Pods with intent to mislead Plaintiff and the Class.

254. Defendant knew or should have known that its conduct violated the DC CPPA.

255. Defendant owed Plaintiff and the Class a duty to disclose the true and unsafe nature of the Power Pods.

256. Defendant's concealment of the true characteristics of the Power Pods was material to Plaintiff and the Class.

257. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Class, about the true nature of the Power Pods.

258. Defendant's violations present a continuing risk to Plaintiff, the Class, and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

259. Plaintiff and the Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information.

260. As a direct and proximate result of Defendant's violations of the DC CPPA, Plaintiff and the Class have suffered injury-in-fact and/or actual damage.

261. Pursuant to D.C. Code Ann. § 28-3905(k), Plaintiff and Class Members seek monetary relief against Defendant to recover damages in an amount three times the actual damages

sustained or one thousand five hundred dollars per violation ($1,500), whichever is greater, together with costs and reasonable attorney fees, punitive damages, injunctive relief, and any other equitable relief as determined by the court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendants as follows:

A.    Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as a representative of the Classes, and designating Plaintiffs' counsel as Class Counsel;

B.    Awarding Plaintiffs and the Classes damages, including compensatory, exemplary, actual, and statutory damages, to Plaintiff and the Classes in an amount to be determined;

C.    For declaratory and equitable relief, including restitution and disgorgement;

D.    For an order enjoining Defendants from continuing to engage in the wrongful acts and practices alleged herein;

E.    Awarding Plaintiffs and the Class Members the costs of prosecuting this action, including expert witness fees;

F.    Awarding Plaintiffs and the Class Members reasonable attorneys' fees and costs as allowable by law;

G.    Awarding Plaintiffs and the Class Members pre-judgment and post-judgment interest; and

H.    Granting any further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: June 11, 2025

/s/ Samuel R. Jackson
Samuel R. Jackson (NY Bar # 5332325)
sjackson@cbplaw.com
Randall K. Pulliam (to apply *pro hac vice*)
rpulliam@cbplaw.com
**CARNEY BATES & PULLIAM, PLLC**
One Allied Drive, Suite 1400
Little Rock, AR 72202
Tel: 501-312-8500
Fax: 501-312-8505

*Attorneys for Plaintiffs and Classes*

55